IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

BILLY JOE POWERS and )
SARAH POWERS, )
         )
         Plaintiffs, )
         )
         )
v. )         No. 3:12-CV-96
         )
STEPHEN WALLEN, *et al.*, )
         )
         Defendants. )

## MEMORANDUM OPINION

This civil action is before the court for consideration of "Defendants' Motion to Dismiss" [doc. 5]. Plaintiffs, husband and wife Billy Joe and Sarah Powers, have filed a response [doc. 10], and defendants have submitted a reply [doc. 11]. Oral argument is unnecessary, and the motion is ripe for the court's determination. For the reasons that follow, the motion will be granted in part and denied in part.

I.

*Background* [1]

Plaintiff Billy Joe Powers (herein after sometimes "plaintiff") is 70 years old and has bad knees. He and his wife own rental property including the apartment complex in LaFollette, Tennessee where the events occurred that are the subject of this lawsuit. On

_____

[1] Factual information is taken exclusively from the complaint since this case is before the court on a motion to dismiss.

April 8, 2010, plaintiffs went to the LaFollette complex regarding matters related to the management and maintenance of the complex and to inquire about rent money due from the occupants of apartment number four. Sarah Powers knocked on the apartment door to speak with the tenants while her husband remained in the driver's seat of their pickup truck. The tenants became belligerent and used vulgar and abusive language in a threatening manner toward Mrs. Powers. Hearing the exchange and observing the conduct of the tenants, plaintiff walked toward the porch area of the apartment. Abusive and vulgar language was used toward the plaintiff as well, at which point the plaintiff advised that he "was 70 years old with two bad knees, but that he had an 'equalizer' he could get to." The complaint states that in fact plaintiff had an unloaded handgun in the glove compartment of the truck. The ammunition was kept in a toolbox area in the truck bed. The plaintiffs decided to leave.

The tenants followed the plaintiffs to the truck and continued screaming at the plaintiffs. One of the tenants, the woman, stood in front of the truck, and as the plaintiffs drove away she ran along beside the truck continuing to scream vulgarities. The plaintiffs assert in the complaint that there were a number of witnesses to this confrontation.

After the plaintiffs had left the complex, Mr. Powers attempted to call 911, but he did not get an answer. The plaintiffs then proceeded to Mrs. Powers's sister's house in Campbell County to determine what to do next. Sometime later, the Campbell County dispatcher returned the call and advised plaintiffs to return to the apartment complex because the police were on the scene. Mrs. Powers decided to leave the handgun at her sister's house since there was no longer a need for protection with the police at the complex.

The officer on the scene was defendant Stephen Wallen who had spoken with the tenants by the time the plaintiffs returned. He informed plaintiff that he had no business in the tenant's apartment and demanded to know why he had threatened the tenants. When the plaintiff attempted to explain what had happened, Wallen cut him off refusing to hear plaintiff's version of the events.

Plaintiff was arrested without a warrant and charged with aggravated assault and unlawful possession of a weapon. Plaintiff was booked and held in jail until he was eventually released on bond. On July 29, 2010,[2] plaintiff filed a motion to dismiss, citing in support some of the reasons why Wallen did not have probable cause to arrest him. Wallen failed to appear at the hearing set on August 3rd, and the hearing was reset for October 26, 2010. Wallen again failed to appear or provide testimony at that hearing. Plaintiff's counsel moved to dismiss the case, which was granted by the court.

The State brought the case to a grand jury on December 3, 2010. Based solely on the testimony of Wallen, the grand injury indicted plaintiff on four counts: 1) aggravated assault; 2) unlawful possession of a weapon; 3) reckless assault; and 4) reckless endangerment. A preliminary hearing was set for January 10, 2011, which was reset to January 31, 2011, because of inclement weather. At the January 31 hearing, plaintiff's attorney was informed that the State planned to dismiss all the charges by *nolle prosequi*, although additional time was needed to work out details. On March 21, 2011, the prosecutor

---

[2] The complaint states July 29, **2011**, which the court considers to be a typographical error.

3

announced in open court that the case against the plaintiff was dismissed.  Plaintiffs filed the complaint on March 1, 2012.

## II.

### *Standard of Review*

Defendants' motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."   In resolving a motion under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).   "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).   "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'. . .   A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570, 556).   "To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Bowman v. United*

4

*States*, 304 F. App'x 371, 374 (6th Cir. 2008) (citing *Ass'n of Cleveland Fire Fighters*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555)).

III.

*Analysis*

**Federal Claim for False Arrest**

Defendants contend that the claim for false arrest brought pursuant to § 1983 by plaintiff [3] is barred by the statute of limitations. Plaintiff does not respond to the argument, so in their reply defendants contend that plaintiff has abandoned this claim. "It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011) (quoting *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)); *see also Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S. D. Ohio 2005) (plaintiff abandoned claim by failing to address it in his responsive briefing); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999) ("The Court will treat that claim as abandoned because Kattar did not address it in his brief in response to Defendants' motion for summary judgment.").

---

[3] The only claim plaintiff Sarah Powers can assert is one for loss of consortium.

5

In any event, whether or not plaintiff responded to the argument, the claim is barred by the one-year statute of limitations for a § 1983 claim. "[C]onstitutional claims asserted under 42 U.S.C. § 1983 are governed by the state personal injury statute of limitations." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (citations omitted). Tennessee Code Annotated § 28-3-104(a)(3) provides that a civil action brought under the federal civil rights statutes must be filed within one year after the cause of action accrues. Thus, Tennessee has a one year statute of limitations for actions brought under federal civil rights statutes, including § 1983. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (citing Tenn. Code Ann. § 28-3-104(a)(3); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986)). However, "federal law determines when the statute of limitations begins to run on a § 1983 claim." *Fox*, 489 F.3d at 233 (citations omitted). "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007).[4]

Plaintiff was arrested on April 8, 2010, and he posted bond and was released. The complaint was not filed until March 1, 2012, almost two years after plaintiff's arrest. Therefore, plaintiff's claim for false arrest under the Fourth Amendment is barred by the one-

---

[4] To the extent the complaint asserts a § 1983 claim for false imprisonment, that claim is also barred by the one-year statute of limitations applicable to the false arrest claim. *Sanders v. Southards Supermarket*, No. 99-6105, 2000 WL 1359638, at *2 (6th Cir. Sept. 14, 2000) (statute of limitations for false imprisonment begins to run when detention ends, which includes when a plaintiff is released on bond, not at the end of the legal proceedings).

year statute of limitations.

### Federal Claim for Malicious Prosecution

Defendants also contend that plaintiff's federal malicious prosecution claim is barred by the statute of limitations. Citing several case authorities, including *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Wallace v. Kato*, 549 U.S. 384 (2007), defendants argue that the statute of limitations on this claim was not tolled or extended until the end of the criminal prosecution. Plaintiff argues that a claim for malicious prosecution does not begin to accrue until a favorable termination in the criminal proceeding has occurred. Plaintiff is correct.

"*Wallace* clarifies the distinction between claims of malicious prosecution, such as the one addressed in *Heck*, and claims of false arrest and false imprisonment. . . . *Heck* held that a claim of malicious prosecution does not accrue until the underlying conviction is invalidated, and this holding was reaffirmed in *Wallace*." *Fox*, 489 F.3d at 235 (internal citations omitted). "In *Heck*, the Supreme Court held that Heck's post-conviction action under § 1983 for claims analogous to the tort of malicious prosecution (brought during the pendency of his state-court criminal appeal) would not accrue until a final adjudication in Heck's favor in state court, since **the tort of malicious prosecution requires final adjudication in favor of the accursed** and any determination by the federal court regarding the legality of the prosecution would necessarily effect (sic) the validity of the state court proceedings." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d

7

631, 638 (6th Cir. 2007) (emphasis added) (citation omitted); *see also Lillard v. City of Murfreesboro*, No. 3:07-1036, 2009 WL 2047048, at *8 (M.D. Tenn. July 10, 2009) ("For malicious prosecution claims under section 1983, the cause of action accrues, and the statute begins to run, when the underlying criminal proceeding terminates in the plaintiff's favor.") (citations omitted).

The criminal prosecution against plaintiff was dismissed on March 21, 2011, ending the criminal matter in his favor. *McGuire v. City of Royal Oak*, No. 05-40185, 2006 WL 3741898, at *9 (E.D. Mich. Dec. 15, 2006) ("*Nolle prosequi* is a sufficient disposition to support a claim for malicious prosecution[;] it does not have to equate to acquittal or a finding of innocence, only termination in the defendant's favor." (citations omitted)). Plaintiff filed his complaint on March 1, 2012, less than one year from the date of the dismissal. Therefore, his malicious prosecution claim is not barred by the one-year statute of limitations.

Nevertheless, defendants also argue that the finding of probable cause by a grand jury precludes the bringing of a claim for malicious prosecution under § 1983. Plaintiff argues that the finding of probable cause in the indictment is not preclusive of the federal malicious prosecution claim.

"The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (citation omitted). Not until *Sykes* did the Sixth Circuit Court of Appeals

8

specifically set forth the elements of a malicious prosecution claim under § 1983. *Id.* ("[T]he Sixth Circuit has [not] yet articulated the elements of a Fourth Amendment malicious-prosecution claim under 42 U.S.C. § 1983 with specificity[;] . . . we do so now.") (citations omitted). [5] The Sixth Circuit stated:

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution[.] Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Id.* at 308-09 (internal quotations marks and citations omitted). The Sixth Circuit in *Sykes* also declined to impose a requirement that a plaintiff must demonstrate "malice" to prevail on a malicious prosecution claim. *Id.* at 309-10.

"Prior to Sykes, some cases seemingly held that § 1983 claims predicated on malicious prosecution necessarily failed if probable cause for the arrest was established." *Amine v. King*, No. 09-13454, 2011 WL 4387229, at *11 (E.D. Mich. Sept. 21, 2011) (citations omitted); *see also Guerra v. Rodriguez*, No. 10-199-JGW, 2012 WL 208083, at *9 (E.D. Ky. Jan. 24, 2012) (citing *Amine*). "Sykes clarified that a probable cause to arrest and

---

[5] Defendants do not cite to nor argue the authority in the *Sykes* case.

9

probable cause to prosecute are two distinct issues, each of which requires separate analyses by the court." *Amine*, 2011 WL 4387229, at *11. The Court in *Sykes* found, "The tort of malicious prosecution is entirely distinct from that of false arrest, as the malicious-prosecution tort remedies detention accompanied not by absence of legal process, but by **wrongful institution** of legal process." *Sykes*, 625 F.3d at 308 (internal quotation marks and citation omitted) (emphasis in original).

With regard to the first element of a § 1983 malicious prosecution claim, that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute," the Court in *Sykes* stated that "the term 'participated' should be construed within the context of tort causation principles. Its meaning is akin to 'aided.' To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Id*. at 309 n.5. The *Sykes* Court further stated, "Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions. . . . The totality of the circumstances informs this fact determination." *Id*. at 312 n.9 (citations omitted).

The Court in *Sykes* determined that an officer who gave false testimony at a preliminary hearing and made misrepresentations participated or influenced the decision to prosecute an individual. The plaintiffs' malicious prosecution claim against the officer who testified at the preliminary hearing was predicated on two misrepresentations she made at that hearing at which the plaintiffs were bound over for trial. The Sixth Circuit noted:

10

It is well established in this circuit that [p]olice officers cannot, in good faith, rely on a judicial determination of probable cause [to absolve them of liability] when that determination was premised on an officer's own material misrepresentations to the court. This means that in order to establish that a testifying officer was responsible for commencing a criminal proceeding for purposes of a malicious-prosecution claim, the Plaintiffs were required to present evidence that [the officer] (1) stated a deliberate falsehood or showed reckless disregard for the truth [at the hearing] and (2) that the allegedly false or omitted information was material to the [court's] finding of probable cause.

*Id.* at 312 (internal quotation marks and citations omitted). The Sixth Circuit concluded that "a reasonable jury could have concluded that [the officer] testified falsely at the preliminary hearing and that her statements were material to the state court's finding of probable cause." *Id.*

This case is only in the pleading stage, so the court only has the allegations in the complaint, which the court takes as true and viewed in the light most favorable to the plaintiff. *Directv*, 487 F.3d at 476. The facts alleged in the complaint at this stage are sufficient to demonstrate that Wallen could have showed a reckless disregard for the truth or omitted information when he testified before the grand jury and that the disregard for the truth or omitted information was material to the finding of probable cause. *Sykes*, 625 F.3d at 312. Plaintiff, of course, will be called upon at a later time to produce evidence to prove the allegations in the complaint in order to sustain the malicious prosecution claim.

As to the remaining two elements of the § 1983 malicious prosecution claim, plaintiff has already shown the fourth element, a favorable determination of the criminal

11

proceeding, because the State dismissed the charges by *nolle prosequi*. *McGuire*, 2006 WL 3741898, at *9. With regard to the third element, the deprivation of liberty, that can be demonstrated because a "pretrial release on bond constitutes a sufficient deprivation of liberty to support a malicious prosecution claim." *Amine*, 2011 WL 4387229, at *12 (citations omitted). Therefore, defendants' motion as to plaintiff's § 1983 malicious prosecution claim will be denied.

### State Law Claim for False Arrest

As with the federal law claim for false arrest, plaintiff does not respond to defendants' argument that the state-law claim for false arrest is barred by the applicable statute of limitations. Plaintiff has thus abandoned the claim. *See Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S. D. Ohio 2005) (plaintiff abandoned claim by failing to address it in his responsive pleading). Nevertheless, whether or not plaintiff filed a response to the argument, the claim is barred by the statute of limitations.[6] Plaintiff's false arrest claim had to be filed within one year of the date he was arrested and taken into custody. *Dirks v. Tudors*, No. E2008-01384-COA-R3-CV, 2009 WL 1372180, at *1 (Tenn. Ct. App. May 18, 2009) (citing Tenn. Code Ann. § 28-3-104(a)(1); *Simmons v. Gath Baptist Church*, 109 S.W.3d 370, 373 (2003)).

---

[6] Plaintiff also asserts in the complaint a claim for false imprisonment. The elements and statute of limitations for a false imprisonment claim in Tennessee are the same as for false arrest. *Crowe v. Bradley Equip. Rentals & Sales, Inc.*, No. E2008-02744-COA-R3-CV, 2010 WL 1241550, at *6 (Tenn. Ct. App. Mar. 31, 2010).

## State Law Claim for Malicious Prosecution

There is a one-year statute of limitations for a malicious prosecution claim brought under Tennessee law. Tenn. Code Ann. § 28-3-104(a)(1); *Gray v. 26th Judicial Drug Task Force*, No. 02A01-9609-CV-00218, 1997 WL 379141, at *2 (Tenn. Ct. App. July 8, 1997) (state law claim for malicious prosecution must be brought within one year after accrual of the claim). There are three elements to a state law claim for malicious prosecution: "(1) A prior suit or judicial proceeding was instituted without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor." *Gray*, 1997 WL 379141, at *2 (citations omitted). "Thus, an action for malicious prosecution cannot be maintained until the termination of the original action in the plaintiff's favor, and the cause of action does not accrue until that point." *Id*.

The criminal proceeding against the plaintiff was dismissed on March 21, 2011. The malicious prosecution claim accrued at that time. The complaint was filed March 1, 2012, within the one-year limitations period. Therefore, the claim is not barred by the statute of limitations.

In addition, defendants argue that any state law torts asserted by plaintiff are barred by the Tennessee Governmental Tort Liability Act ("TGTLA"), citing Tenn. Code Ann. § 29-20-205. Defendant's assertion is true as to the governmental entity defendant, City of LaFollette, but not accurate as to the defendant officer sued in his individual capacity.

13

Section 29-20-205 provides in pertinent part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of: . . .

> (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights.[7]

The immunity granted in § 205 applies only to the intentional torts specifically enumerated in the statute. *Arbuckle v. City of Chattanooga*, 696 F. Supp. 2d 907, 929 (E.D. Tenn. 2010) (citing *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001)). In addition, "the TGTLA 'addresses the liability of governmental entities only. Its jurisdictional limitations do not apply to persons sued individually.'" *Id*. (quoting *Timberlake v. Benton*, 786 F. Supp. 676, 697 (M.D. Tenn. 1992)); *see also Reagan v. City of Knoxville,* No. 3:07-CV-189, 2008 WL 305018, at *5-7 (E.D. Tenn. Jan. 31, 2008) (TGTLA definition of governmental entity does not include employees, so TGTLA does not provide immunity to public employees); *Hatfield v. Cleveland Bank & Trust Co.*, No. 03A01-9506-CV-00209, 1995 WL 621003, at *4 (Tenn. Ct. App. Oct. 24, 1995) ("T.C.A. § 29-20-205 does not address the subject of a governmental *employee's* immunity. That statute, by its terms, only applies to 'governmental entities.'" (emphasis in original)). "Thus, when the injury caused by the governmental

---

[7] The Tennessee Supreme Court has held that "infliction of mental anguish" applies only to intentional infliction of emotional distress. *Sallee v. Barrett*, 171 S.W.3d 822, 829 (Tenn. 2005).

employee arises out of one of the listed intentional torts, the governmental entity is immune from suit."    Therefore, the City of LaFollette would have immunity for the malicious prosecution claim by virtue of § 205(2).

There is limited immunity granted to governmental employees by Tenn. Code Ann. § 29-20-310(c).

> An individual employee of a governmental entity is immune when the governmental entity for which he works is immune from suit, unless the employee's act or omission was willful, malicious, criminal, or performed for personal financial gain:
>
>> (c) No claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities in § 29-20-404, **unless the act or omission was willful, malicious, criminal, or performed for personal financial gain**, or unless the act or omission was one of medical malpractice committed by a health care practitioner . . . .

*Autry v. Hooker*, 304 S.W.3d 356, 363 (Tenn. Ct. App. 2009) (quoting Tenn. Code Ann. § 29-20-310(c) (emphasis added in original)).  Further, in *Wells v. Hefner*, No. M2002-02502-COA-R3-CV, 2003 WL 22068097 (Tenn. Ct. App. Sept. 5, 2003), the Tennessee Court of Appeals determined that employees of a state university, "a governmental entity pursuant to the [TGTLA]," were not immune from a malicious prosecution suit.  The Court relied on Tenn. Code Ann. § 9-8-307(h), which provides in relevant part: "State officers and

15

employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, **except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain**." (emphasis added). The Court held: "State employees, therefore are not immune from causes of action alleging malicious acts. [Plaintiff's] claim is for malicious prosecution. Without opining on whether [plaintiff] will succeed in demonstrating malice, defendants are not immune from this claim." *Wells*, 2003 WL 22068097, at *1. Accordingly, the individual officer defendant, Wallen, is not immune from the state law malicious prosecution claim.

Defendants argued exclusively that to the extent plaintiff alleged Tennessee state law torts in the complaint, those claims are barred by the one-year TGTLA statute of limitations. Because of that position, defendants did not make the argument regarding the preclusive effect of the grand jury's finding of probable cause as they did with the § 1983 malicious prosecution claim. Plaintiff does address the argument concerning the state law claim in his response, arguing that the indictment is not preclusive to bringing the state law claim for malicious prosecution. The court therefore must determine whether plaintiff has alleged sufficient facts under Tennessee law, which differs from the standard in a § 1983 case, to demonstrate that the indictment is insufficient to bar the subsequent suit for malicious prosecution.

"Tennessee courts have declined to adopt a per se rule that the indictment of the accused by a grand jury is evidence that the person who initiated the proceedings has probable cause therefore." *Day v. Ingle's Markets, Inc.*, No. 2:01-CV-325, 2006 WL

16

239290, at *3 (E.D. Tenn. Jan. 25, 2006) (citing *Kerney v. Aetna Cas. & Surety Co.*, 648

S.W.2d 247 (Tenn. Ct. App. 1982)). In *Kerney*, the Tennessee Court of Appeals stated:

> We decline the defendant's invitation to adopt the rule that the indictment of the accused by a grand jury, if unexplained, is evidence that the person who initiated the proceedings had probable cause therefor. This rule is one of many rules on the subject and we are not convinced that it is either the best rule or that it is in conformity with the law of malicious prosecution in Tennessee. Where a finding is procured by fraud, false testimony, or where the defendant did not believe in the guilt of the plaintiff, an indictment is not sufficient to bar a suit for malicious prosecution.

*Kerney*, 648 S.W.2d at 252 (internal quotation marks and citations omitted); *see also Spicer*

*v. Thompson*, No. M2002-03110-COA-R3-CV, 2004 WL 1531431, at *26 (Tenn. Ct. App.

July 7, 2004) ("While an indictment by a grand jury is said in some cases to allow a fact

inference of probable cause[,] such cases are in Tennessee at best questionable . . . ." (citing

*Kerney* rule)).

This court in *Day* addressed a malicious prosecution case in which there had

been a prior grand jury indictment. The court considered the preclusive effect of the grand

jury's findings of probable cause. After noting that Tennessee has not adopted a per se rule

on the issue and that an indictment is not sufficient to bar a later malicious prosecution action

when the grand jury's finding are procured by fraud, false testimony or other corrupt means,

the court stated:

> Defendant, of course, argues that there is absolutely no evidence in this case that Ingle's procured Day's indictment by fraud, false testimony or other corrupt means and, therefore, Ingle's is entitled to judgment as a matter of law. There is, however,

testimony that John Freshour, Ingle's store manager, **who was the only witness to testify before the initial Carter County Grand Jury** considering Day's case, **intentionally failed to inform the grand jury of relevant, material facts, many of which were exculpatory to Day**, surrounding these alleged thefts. Taking the strongest legitimate view of the evidence in favor of Ms. Day and allowing all reasonable inferences in her favor, this Court cannot find as a matter of law that plaintiff's indictment was not procured through fraud, false testimony or other corrupt means. The indictments, therefore, do not preclude relitigation of the question of probable cause.

*Day*, 2006 WL 239290, at *3.

Plaintiff in this case makes similar allegations concerning the conduct of Wallen. In the complaint, plaintiff alleges in part that Wallen, who was the only witness at the grand jury proceedings, "turned a blind eye toward any and all exculpatory evidence" and conducted "an incomplete, incompetent, unreasonable, and reckless investigation in order to effect Mr. Powers's arrest."

This case is in the pleading stage, at which the allegations in the complaint are considered true and viewed in the light most favorable to the plaintiff. *Directv,* 487 F.3d at 476. Plaintiff has provided sufficient factual matter, which the court accepts as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plaintiff will of course have to provide sufficient proof to demonstrate that the indictment was in fact procured by fraud, false testimony or other corrupt means. At this point, the complaint is sufficient to survive the motion to dismiss.

18

## Outrageous Conduct Claim

Plaintiff asserts in the complaint that Wallen is guilty of outrageous conduct and that plaintiff suffered "serious mental anguish." Outrageous conduct and intentional infliction of emotional distress are the same cause of action. *Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997). Defendants argue that plaintiff's claim for mental anguish is barred by the TGTLA one-year statute of limitations.

To the extent the complaint can be construed that a claim for intentional infliction of emotional distress has been asserted against the City of LaFollette, the claim is barred by Tenn. Code Ann. § 29-20-205. The "infliction of mental anguish" referenced in section 205 applies only to intentional infliction of emotional distress. *Sallee*, 171 S.W.3d at 829. However, Wallen, sued in his individual capacity, would not be immune. *Arbuckle*, 696 F. Supp. 2d at 930 (city immune under TGTLA for intentional infliction of emotional distress but individual officers not immune from claim).

Nevertheless, the claim fails for two reasons. The first is that it is barred by the one year statute of limitations. Tenn. Code Ann. § 28-3-104. Plaintiff was arrested on April 10, 2010, and plaintiff alleges that his "unwarranted arrest" by Wallen is a basis for his outrageous conduct claim. The complaint was not filed until March 1, 2012, clearly more than one year after the arrest. Thus the claim is barred.

The second reason the claim fails is because plaintiff has not alleged sufficient facts to state a claim for intentional infliction of emotional distress. There are three elements

19

to the cause of action for intentional infliction of emotional distress under Tennessee law: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain*, 936 S.W.2d at 622 (citations omitted). In *Bain*, the Tennessee Supreme Court also noted that it has "adopted and applied the high threshold standard described in the Restatement (Second) of Torts" for determining when particular conduct is tortious. *Id*. at 622-23. The Court stated:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. **Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.** Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Id*. at 623 (emphasis added) (citations omitted). The allegations in the complaint do not rise to this stringent standard. Therefore, the claim would also be dismissed for failure to state a claim for relief.

20

**Sarah Powers's Loss of Consortium Claim**

Although defendants assert that complaint contains no allegations regarding any claim by Sarah Powers, she does in fact allege that she has lost the consortium and services of her husband because of the medical and emotional injuries he has suffered. However, with regard to the § 1983 claim asserted by Billy Joe Powers, the court is of the opinion that Sarah Powers cannot state a claim for loss of consortium for the alleged violation of her husband's civil rights. Loss of consortium is a derivative claim. *Hunley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 557 (Tenn. 2001). Thus, Sarah Powers's consortium claim would originate from Billy Joe Powers's claim for violation of his civil rights. *Id.* "One person may not sue for the deprivation of another person's civil rights." *Pierce v. Stinson*, 493 F. Supp. 609, 611 (E.D. Tenn. 1979) (citing *Hall v. Wooten*, 506 F.2d 564, 566 (6th Cir. 1974)).

In *Cramblit v. Fikse*, No. 91-4002, 1992 WL 307962 (6th Cir. Oct. 23, 1992), the Sixth Circuit did not have to reach the issue of whether the plaintiff's mother could maintain a derivative action for alleged violation of her son's constitutional rights. However, the Court observed: "We note in passing, however, that an action under 42 U.S.C. § 1983 inures only to the benefit of one whose own personal constitutional rights were violated." *Id.* at *6 (citing *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986) (bystander cannot recover for witnessing violation of the civil rights of another); *Hall v. Wooten*, 506 F.2d 564 (6th Cir. 1974) (one cannot sue for the deprivation of the civil rights of another); *Jenkins v. Carruth*, 583 F. Supp. 613 (E.D. Tenn. 1982) (husband cannot sue for the alleged deprivation of his

wife's civil rights); *Pierce v. Stinson*, 493 F. Supp. 609 (E.D.Tenn. 1979) (parents cannot

maintain an action under 42 U.S.C. § 1983 for the alleged deprivation of their children's civil

rights)).

> In *Jenkins v. Carruth*, this court stated:
>
> > The plaintiffs have not cited, nor has the Court found, any
> > authority permitting a husband to recover damages under 42
> > U.S.C. § 1983 for the deprivation by a third party of the civil
> > rights of his wife. The law seems clear that one person may not
> > sue, nor recover damages, for the deprivation of another
> > person's civil rights.

583 F. Supp. at 616 (citations omitted). Relying on *Jenkins*, this court held that a spouse

"cannot state a claim for loss of consortium due to any alleged violation of [her husband's]

civil rights under Section 1983." *Cross v. City of Chattanooga*, No. 1:04CV108, 2005 WL

2456977, at *11 (E.D. Tenn. Oct. 3, 2005); *see also Claybrook v. Birchwell*, 199 F.3d 350,

357 (6th Cir. 2000) ("In the Sixth Circuit, a section 1983 cause of action is entirely personal

to the direct victim of the alleged constitutional tort."); *Murray v. Harriman City*, No. 3:07-

CV-482, 2010 WL 546590, at *6 (E.D. Tenn. Feb. 10, 2010) ("[T]here is no loss of

consortium claim under § 1983."). Therefore, Sarah Powers's loss of consortium claim based

upon § 1983 will be dismissed.

> Nonetheless, plaintiffs assert that Sarah Powers's loss of consortium claim can

be based upon the state law tort of malicious prosecution. "[W]ith respect to common law

claims for loss of consortium, 'the right to recover for loss of consortium is a right

independent of the spouse's right to recover for the injuries themselves.'" *Shaffer v. Shelby*

*Cnty.*, No. W2000-02215-COA-R3-CV, 2002 WL 54389, at *6 (Tenn. Ct. App. Jan. 11, 2002) (quoting *Swafford v. City of Chattanooga*, 743 S.W.2d 174, 178 (Tenn. Ct. App. 1987)). However, "while the claim for loss of consortium is a claim independent from that of the injured spouse for other damages, it is also a derivative claim in that the physical injuries or incapacities of one's spouse give rise to and establish the claim." *Cary v. Bourne*, No. 02A01-9511-CV-00263, 1997 WL 585750, at *9 (Tenn. Ct. App. Sept. 23, 1997) (citing *Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 108 (Tenn. 1996) (in Tennessee a loss of consortium claim is considered as derivative of the principal claim for injuries)). Therefore, Sarah Powers must have a state-law tort claim asserted by her husband that survives in order to maintain her loss of consortium claim.

The malicious prosecution claim, at this juncture, can be the underlying state law tort claim on which Sarah Powers's loss of consortium claim can be based. Should the malicious prosecution claim not survive a future dispositive motion, the loss of consortium claim, because of its derivative nature, would also fail. However, the claim presently survives the motion to dismiss.


IV.

*Conclusion*

Accordingly, for the reasons stated herein, defendants' motion to dismiss will be granted in part and denied in part. An order consistent with this opinion will be entered.

23

ENTER:

_____s/ Leon Jordan_____
United States District Judge

24