IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

BILLY JOE POWERS and　　　　　)
SARAH POWERS,　　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　)
　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　)　　　No. 3:12-CV-96
　　　　　　　　　　　　　　　)
STEPHEN WALLEN, *et al.*,　　　　)
　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　)

## MEMORANDUM OPINION

　　　　This civil action is before the court for consideration of "Defendants' Motion for Summary Judgment" [doc. 29]. Plaintiffs have filed a response in opposition [doc. 38], and defendants have submitted a reply [doc. 40]. Oral argument is unnecessary, and the motion is ripe for the court's determination. For the reasons that follow, the motion will be granted, and this case will be dismissed.

　　　　Plaintiff Billy Joe Powers (hereinafter sometimes "plaintiff") has brought suit for malicious prosecution under 42 U.S.C. § 1983 and Tennessee law. His wife, plaintiff Sarah Powers, has brought a loss of consortium claim. Based upon the court's prior ruling, the state law malicious prosecution claim stands only against the individual defendant Stephen Wallen, and the loss of consortium claim is based solely on the state law claim for malicious prosecution.[1]

---

[1] The claims identified are those that remain after the court's ruling on defendants' motion
(continued...)

# I.

*Background* [2]

The events that give rise to this lawsuit began on April 8, 2010, when plaintiffs

went to apartment buildings they own located at 208 Ellison Road in LaFollette, Tennessee.

The purpose for the visit was to perform repairs and show an apartment. Although it was not

their practice to regularly carry a gun, on that day they took a gun with them. While at the

apartments, Sarah Powers decided to check on overdue rent owed by Clyde McCarty and

Danielle Ridenour (hereinafter sometimes "tenants").

---

[1](...continued)
to dismiss. In a memorandum opinion and order the court granted in part and denied in part defendants' motion to dismiss [docs. 14, 15]. The court dismissed the claims for false arrest and false imprisonment under 42 U.S.C. § 1983 and the false arrest, false imprisonment and outrageous conduct claims brought under Tennessee law. The court also dismissed the claim for malicious prosecution based upon Tennessee law against the City of LaFollette.

[2] In identifying facts before the court, plaintiffs cite to the original complaint and a pre-hearing brief that was submitted to the general sessions court. The original complaint has been supplanted by the amended complaint and is no longer before the court. *See Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008) (stating that "original complaint . . . is a nullity, because an amended complaint supercedes all prior complaints"); *B & H Med., LLC v. ABP Admin., Inc.*, 526 F.3d 257, 268 n.8 (6th Cir. 2008) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case.") (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed. 1990)).

Furthermore, once a summary judgment motion has been filed, "the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Johnson v. City of Cincinnati*, 119 F. Supp. 2d 735, 739 (S.D. Ohio 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

As to the referenced brief, it is not attached as an exhibit to plaintiffs's response and is therefore not before the court. Thus, the court does not need to address whether it would be an appropriate document for identifying facts of record at the summary judgment stage.

Sarah Powers went to the McCarty and Ridenour apartment to inquire about the rent while her husband stayed in their truck. A verbal altercation occurred between Sarah Powers and the tenants and at one point Mrs. Powers pushed Clyde McCarty away from her. Plaintiff then left the truck and intervened in the altercation. According to plaintiff, he told the tenants that he had an "equalizer" if he needed it. Plaintiffs maintain that the gun referred to as the "equalizer" was in the truck and not pulled on McCarty and Ridenour. The tenants reported to the police that plaintiff pulled a handgun from his pocket, cocked it, and threatened them.

After the altercation ended, McCarty called 911 to report that plaintiff had pulled a firearm on him, stating in the call that "[he] [plaintiff] walked outside and he said 'I have an equalizer right here' and he pulled out, it looked like it was a, probably a, uh, small .22, a handgun, a small handgun." McCarty also told the dispatcher that his fiancé, Ridenour, had been struck by the tailgate of plaintiffs's truck as the plaintiffs were leaving the premises. After leaving the apartment property, plaintiffs called 911 but could not get an answer.

In response to McCarty's 911 call, defendant Wallen and another officer investigated the complaint by going to the Ellison Road apartment and speaking with McCarty and Ridenour. Wallen separated the victims and spoke with them individually and also got a written statement from each of them. Ridenour's statement provides as follows:

> At approximately 4:30 pm on 4/8/10. Sarah Powers knocked on our door demanding the rent which was less the (sic) two weeks late. We told her that we were going to move out to just keep the deposit for our last months rent. Clyde was going to step by

3

her to go outside to smoke when she put her hands on him & told him that her husband would take (sic) of him. Her husband Bill Powers stepped out of the truck onto the porch when he pulled a small black handgun out of his pocket & cocked it. Sarah told Bill to put the gun up & get back in the truck. At this time I was standing right inside the front door holding my 3 ½ month old daughter. After checking the apt. next to ours and cussing us, they both got back into their truck and pulled into the apt. to the left of ours. I stepped outside to smoke, when Bill starting (sic) cussing me from his truck, when I told him to just hold on that the police were on the way. I had walked from my front porch to the parking lot. His wife Sarah had been in the elderly lady's apt., when she got back into the truck, he put his truck into reverse, spinning gravels, then struck me in my upper stomach with the tailgate of his truck. I had just had gallbladder surgery on Monday 4/5/10, so I had multiple incisions, along with suctures (sic). I then said to Bill you just hit me. I moved to the front of his truck, as he backed me to the end of the road with his truck. He then told me that he would be back that evening to blow me & Clyde both out, leaving our daughter with no parents. He pulled out of the parking lot & left.

McCarty's written statement provides:

There was a knock on the door (sic) I answered it. It was Sarah the landlord (sic) She was wanting rent and I told her were (sic) planing on leaving any ways so use the deposit to pay the rent so u (sic) don't have to give it back to us (sic) I was going to step out and smoke and she pussed (sic) me and hit me on my neck and said yoor (sic) not going no where. We all steped (sic) outside and she called me everything in the book accused me off (sic) being a dope feind (sic) and saying I was [illegible] my [neighbors]. I said that was a lie. Her husband come (sic) and threatin (sic) to knock me out again and said he has his equlizer (sic) in his pocket and I said do it come over and knock me out and thats (sic) when he pulled a small handgun and chocked (sic) his wife grabed (sic) his arm and said no don't (sic) do that there (sic) not worth it. My girlfeind (sic) and 3 ½ month old child was (sic) standing right behind me when he pulled the gun out on us. She went and check (sic) out the other aprment (sic)

4

> and that's when I came inside and called the police dept. My
> girlfriend said that she was hit by hit (sic) truck from the back
> end of the truck while I was on the phone with the cops. He told
> her that he would be back later on tonite (sic) to kill us both and
> ower (sic) child wouldn't have parents.

McCarty and Ridenour apart from their written statements independently told Wallen that the weapon was a black revolver with wood handles.

Police dispatch returned plaintiffs's unanswered 911 call and requested that they return to the apartments. Wallen had told dispatch to "go ahead and send him [plaintiff] back up here, let's go ahead and get a report from both sides." After receiving the request to return to the scene, plaintiffs went to Sarah Powers's sister's home and left the gun there. Sarah Powers testified in her deposition: "But 911 called. And we went by my sister's. I took the gun in. Didn't even talk to her much. She's 85 years old. I just laid it on top of the refrigerator. I said, "We'll be back later. I just need to leave this here."

Plaintiffs returned to the scene of the altercation where they were questioned by Wallen and the other investigating officer. Plaintiff was not forthcoming in answering Wallen's inquiries about the gun and its location. Finally the plaintiffs provided information regarding the location of the gun, and Sarah Powers went to her sister's to pick it up. The gun matched the description of the gun that the tenants gave to Wallen. Plaintiff was arrested and charged with aggravated assault and unlawful possession of a weapon. In the complaint/affidavit, Wallen referenced that plaintiff allegedly pulled a handgun and threatened the male victim with killing him and his girlfriend and also referenced that the

5

female victim was struck with plaintiff's truck. Wallen also stated in the complaint/affidavit that "[d]efendant then left the scene and later returned where same weapon described by victims was recovered from defendant."

The case was initially prosecuted in Campbell County General Sessions Court, but it was dismissed without prejudice when Wallen had conflicts with the hearing dates. The case was taken to the grand jury, where a true bill was returned, indicting plaintiff on charges of aggravated assault, unlawful possession of a weapon, reckless assault, and reckless endangerment. The last two charges were added by the prosecutor. Wallen was the only witness to testify at the grand jury. The case was dismissed *nolle prosequi* because the victims could not be found and failed to appear. Subsequently, plaintiffs filed the lawsuit now before the court.

## II.

### *Standard of Review*

Defendants have brought their motion under Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion."

This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

*Analysis*

<u>Plaintiffs' Proposed Expert</u>

Before discussing the specific claims subject to the motion for summary judgment, the court must first address the report submitted by plaintiffs's proposed expert Samuel Nelson. According to the curriculum vitae submitted with the report, Nelson has a law enforcement background and experience. Defendant objects to the report because it contains improper legal conclusions. The court agrees and accordingly will not consider Nelson's report.

Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." The issue to be embraced, however, must be a factual one. *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994); *DeMerrell v. City of Cheboygan*, 206 F. App'x 418 (6th Cir. 2006) (citing *Berry*). The Sixth Circuit in *Berry* held that "[w]hen the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue." *Berry*, 25 F.3d at 1353.

The opinions Nelson offers are replete with legal conclusions. Nelson opines that Wallen acted "unreasonably" when he arrested plaintiff; the arrest should never have happened; "[t]here was no probable cause for this arrest"; and the arrest was "contrary to

8

state law in several respects." These legal conclusions are based upon his interpretation of the facts. "These opinions weigh the evidence, find the facts, apply the law as [Nelson] sees it (for which he is not qualified), and resolve the case. These opinions do not assist the jury; rather, they supplant the jury. They are inadmissible legal conclusions." *Daugherty v. Graves*, No. 3:11-CV-458, 2013 WL 501670, at *3 (E.D. Tenn. Feb. 8, 2013) (citations omitted). Therefore, the court will not consider the opinions of plaintiffs' proposed expert Nelson.

## Malicious Prosecution Under § 1983

In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit specifically set forth the elements of § 1983 malicious prosecution claim, a claim under the Fourth Amendment that "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Id*. at 308. The Sixth Circuit identified the following required elements:

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution[.] Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

9

*Id*. at 308-09 (internal quotations marks and citations omitted). The *Sykes* Court also made clear that a plaintiff does not have to show "malice" in order to prevail on a malicious prosecution claim. *Id*. at 309-10. Defendants argue that plaintiff cannot demonstrate elements one and two and therefore the claim should be dismissed as a matter of law. Plaintiff argues that he has made a sufficient showing to survive summary judgment.

With regard to the first factor, the issue is whether Wallen made, influenced, or participated in the decision to prosecute plaintiff. "[T]he term 'participated' should be construed within the context of tort causation principles. Its meaning is akin to 'aided.' To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Id*. at 309 n.5. In *Sykes* the Sixth Circuit stated, "It is absolutely clear . . . that an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Id*. at 314 (emphasis in original). Rather, to demonstrate an officer's participation in the decision to prosecute, plaintiff must show the officer committed wrongful acts as making misrepresentations to the prosecutor or testifying falsely. *Id.* at 312 ( "[I]n order to establish that a testifying officer was responsible for commencing a criminal proceeding for purposes of a malicious-prosecution claim, [plaintiff is] required to present evidence that [defendant] (1) stated a deliberate falsehood or showed reckless disregard for the truth [at the grand jury] and (2) that the allegedly false or omitted information was material to the [grand jury's]

10

finding of probable cause.") (internal quotation marks and citation omitted)).

Plaintiff has presented no proof whatsoever that Wallen offered false testimony to the grand jury or that he exhibited a reckless disregard for the truth when he testified. Plaintiff also has offered no evidence to counter the affidavits of Wallen and the prosecutor, Jeffers. Wallen testifies in his affidavit that after arresting plaintiff he had "no further involvement in [plaintiff's] criminal prosecution other than offering testimony when subpoenaed by the District Attorney." Wallen states that he was subpoenaed twice when the case was in general sessions court but could not appear either date because he was in training for one setting and unavailable for the second. He further testifies that the general sessions case was dismissed for failure to prosecute and the next he heard about the case was when he received a subpoena to testify before the grand jury. In addition, Wallen states that he "participated in the grand jury proceedings only to the extent I offered truthful testimony based on my investigation conducted on the scene on April 8, 2010"; he "had no further involvement in the prosecution of Billy Joe Powers"; he "did not make, influence or participate in the decision to prosecute Mr. Powers" but "simply offered testimony when subpoenaed by the District Attorney." At the summary judgment stage, plaintiff cannot rely on the allegations in his complaint; he must present evidence to counter the proof presented by defendants and defeat summary judgment. *See Johnson v. City of Cincinnati*, 119 F. Supp. 2d 735, 739 (S.D. Ohio 2000); *Wiederhold v. EMC Mortg. Corp.*, No. 10-cv-13414, 2012 WL 1094332, at *3 (E.D. Mich. Mar. 30, 2012) ("[N]onmoving party may not rely on

11

mere allegations or denials, but must 'cit[e] to particular parts of materials in the record' as establishing that one or more material facts are 'genuinely disputed.'") (quoting Fed. R. Civ. P. 56(c)(1)).

Jeffers testifies in his affidavit that he was the Assistant District Attorney charged with prosecuting plaintiff and that his office added the charges of reckless endangerment and reckless assault, not officer Wallen. Jeffers further states, "After the case was dismissed without prejudice in General Sessions Court, I, on behalf of the District Attorney's Office, made the sole decision to seek a grand jury indictment. Officer Stephen Wallen did not make, influence or participate in the decision to prosecute Billy Joe Powers. I did not consult with Officer Wallen as to whether it would be appropriated to seek a grand jury indictment."

This affirmative testimony by Jeffers and Wallen stands unchallenged by plaintiff. Although plaintiff attempts to make a question of fact concerning whether Wallen was subpoenaed to the grand jury, any issue raised is immaterial and a red herring at best. Wallen has affirmatively testified under oath that he was subpoenaed to the grand jury, and plaintiff presents no proof to the contrary. Whether Wallen was subpoenaed or went at the request of the prosecutor is of no import based upon the existing record. He stated under oath in his affidavit that he appeared before the grand jury, provided truthful testimony that was not misleading, and that he "did not act with a reckless disregard for the truth." Plaintiff has not offered any evidence to challenge this testimony or the affirmative testimony that

Wallen was subpoenaed.

Plaintiff contends that Wallen concealed numerous facts from the grand jury, "namely evidence of the shoddy and incomplete nature of the investigation." He contends that he would not have been indicted had Wallen testified as to the true nature of his investigation and avers that "Wallen presumably ignored or fabricated facts relating to the thoroughness of this investigation." Plaintiff then points out a number of ways Wallen's investigation on the scene was lacking. He argues that the omissions show that there was no probable cause and that the omissions are material, thus demonstrating that Wallen participated in the prosecution. All of this is pure speculation as plaintiff has no evidence that Wallen made any material omissions at the grand jury. On the one hand plaintiff argues that Wallen failed to speak with witnesses at the scene and on the other hand argues that Wallen omitted facts before the grand jury. As defendant points out, "how could he have intentionally omitted facts in front of the grand jury that he did not know about?" As will be discussed below, Wallen's investigation at the scene of the incident was adequate under the circumstances as was his determination that probable cause existed to arrest the plaintiff. The case was dismissed without prejudice at the general sessions level. The prosecutor, without participation by Wallen, chose to take the case to the grand jury. Wallen stated in his affidavit that when he was subpoenaed to the grand jury he testified as to his investigation on April 8, 2010.

Plaintiff has failed to produce evidence to demonstrate that Wallen "made, influenced, or participated" in the decision to prosecute the plaintiff. The record reflects that once Wallen had filled out the complaint affidavit and delivered the plaintiff to jail, he was not involved in the prosecution of the case other than being called as a witness. *Cf. Hollis v. Bullard*, No. 10-10729, 2011 WL 5184228, at *5 (E.D. Mich. Nov. 1, 2011) ("Other than [defendant] presumably providing his police report to the prosecutor and being identified as the complaining witness, Plaintiff produces no evidence that [defendant] actually conferred with the prosecutor in deciding to prosecute Plaintiff"); *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005) (malicious prosecution claim failed because plaintiff "present[ed] no evidence suggesting that defendants conspired with, influenced, or even participated in, [the prosecutor's] decision to bring charges against [the plaintiff]"); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002) (officer not liable in malicious prosecution case since "[t]here is no evidence that he made or even was consulted with regard to the decision to prosecute [plaintiff]"). After the case was dismissed in general sessions court, the prosecutor alone made the decision to take the case to the grand jury and to add two additional charges. There is absolutely no proof that Wallen participated in or in any way influenced the prosecutor's decision to seek a grand jury indictment and to pursue the additional charges as well. Plaintiff has therefore failed to demonstrate the first element of his malicious prosecution claim.

14

The second element that plaintiff must prove is that there was a lack of probable cause for the prosecution. "*Sykes* clarified that a probable cause to arrest and probable cause to prosecute are two distinct issues, each of which requires separate analyses by the court." *Amine v. King*, No. 09-13454, 2011 WL 4387229, at *11 (E.D. Mich. Sept. 21, 2011). Probable cause to prosecute exists where "facts and circumstances [are] sufficient to lead an ordinarily prudent person to believe the accused [is] guilty of the crime charged." *MacDermid v. Discover Fin. Servs.*, 342 F. App'x 138, 146 (6th Cir. 2009). "Under federal law, the issuance of an indictment by a grand jury conclusively determines the existence of probable cause." *Davis v. McKinney*, 422 F. App'x 442, 443 (6th Cir. 2011) (citing *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)) ("[T]he finding of an indictment, fair upon its face by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer."). There is, however, an exception that applies "where the indictment was obtained wrongfully by defendant police officers who knowingly present[ed] false testimony to the grand jury." *Cook v. McPherson*, 273 F. App'x 421, 424 (6th Cir. 2008). "Absent evidence of perjured testimony or irregularity in the grand jury proceeding so as to indicate that the indictment was somehow tainted, there is a conclusive presumption that probable cause supported the prosecution of [plaintiff]." *Lefever v. Ferguson*, 956 F. Supp. 2d 819, 838 (S.D. Ohio 2013) (citing *Bakos v. City of Olmsted Falls*, 73 F. App'x 152, 157 (6th Cir. 2003)).

Plaintiff was indicted by the Campbell County Grand Jury, and a copy of the true bill is included in the record. This finding is conclusive that there was probable cause to prosecute plaintiff for the charges identified unless plaintiff can demonstrate that the exception applies. Plaintiff, however, has not presented any evidence that Wallen knowingly presented false testimony to the grand jury or that the grand jury proceedings were in some way tainted or compromised. His entire argument centers around the caliber of Wallen's investigation and the information that Wallen allegedly did not discover. Plaintiff argues repeatedly that "a cursory investigation" would have produced certain evidence showing there was no probable cause. This contention, however, does not show that Wallen testified falsely or that the grand jury was tainted. *Cf*. *Davis v. McKinney*, No. 4:08-CV-00117-M, 2010 WL 1416737 (W.D. Ky. Apr. 1, 2010) (indicted plaintiff's only evidence to advance malicious prosecution claim was that officer ignored or failed to discover facts indicating plaintiff not owner of particular house - evidence did not show indictment unfair on its face or that it was issued by improperly constituted grand jury so malicious prosecution claim failed); *Lee v. Lucas*, No. 1:10 cv 00151, 2013 WL 5670930, at *10 (N.D. Ohio Oct. 15, 2013) (in context of malicious prosecution case, court found "where an indictment is fair on its face, a defendant is not entitled to challenge it on the ground that information he considered favorable to his defense was not presented to the grand jury" as federal prosecutor is not obligated to present exculpatory evidence to grand jury); *Martin v. Maurer*, No. 5:13CV1109, 2014 WL 575729, at *3 (N.D. Ohio Feb. 11, 2014) (in malicious prosecution

16

case plaintiff contended liability flows from failure to disclose exculpatory information to grand jury - court noted that Sixth Circuit does not recognize such an obligation); *Shakleford v. Hensley*, No. 12-194-GFVT, 2013 WL 5371996, at *7 n.2 (E.D. Ky. Sept. 24, 2013) ("[E]ven if it were unreasonable for [the officer] to believe he had probable cause at the time he testified before the grand jury, this is not the same as presenting false testimony.").

Furthermore, there was probable cause to arrest plaintiff, and Wallen's investigation at the time of plaintiff's arrest was not unreasonable under the circumstances. "For a police officer to have probable cause for arrest, there must be facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (internal quotation marks and citations omitted). "[T]he Fourth Amendment does not require that a police officer *know* a crime has occurred at the time the officer arrests or searches a suspect. The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty." *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (citation omitted) (emphasis in original). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. . . . [T]he establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. McClain*, 444 F.3d 556, 562-63 (6th Cir. 2005) (internal quotation marks and citations omitted). "The

17

quantum of proof required to establish probable cause is significantly lower than that required to establish guilt." *Criss v. City of Kent*, 867 F.2d 259, 262 n.1 (6th Cir. 1988) (citing *Draper v. United States*, 358 U.S. 307, 311-12 (1959)). "Probable cause is a standard more stringent than reasonable suspicion, but does not require any showing that the officer's suspicions prove to be correct or that they are more likely true than false." *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007) (citation omitted). "The probability of criminal activity is assessed under a reasonableness standard based on an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest*." *Crockett*, 316 F.3d at 580 (internal quotation marks and citation omitted) (emphasis in original); *Peet v. City of Detroit*, 502 F.3d 557, 565 (6th Cir. 2007) ("[P]robable cause determinations must be evaluated according to the information the police knew at the moment of the challenged conduct, not information learned for the first time afterwards."); *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) ("Probable cause is assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.") (internal quotation marks and citation omitted).

Wallen arrested plaintiff and charged him with aggravated assault, Tennessee Code Annotated § 39-13-102, and unlawful possession of a weapon, Tenn. Code Ann. § 39-17-1307. Section 39-13-102 provides in relevant part that an aggravated assault occurs when a person commits an assault involving the use or display of a deadly weapon. Under Tennessee law, an assault is committed when a person "[i]ntentionally or knowingly causes

18

another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101. Section 39-17-1307 is a misdemeanor weapons charge, which provides that "[a] person commits an offense who carries with intent to go armed a firearm . . . ."

Wallen's investigation included interviewing the victims separately, and he testified that their stories matched almost identically. They described a black revolver with wooden handle which matched the description of plaintiff's gun. Based upon the victims's description of plaintiff's actions with the gun, Wallen had probable cause to believe that plaintiff had displayed a weapon and that the victims were in reasonable fear of bodily injury, justifying the arrest of plaintiff. An eye witness account is sufficient to establish probable cause. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). In addition, plaintiff's conduct with the gun was sufficient to provide probable cause for arrest on the weapons charge as well. *Cf., United States v. Reagan*, 401 F. App'x 14, 16 (6th Cir. 2010) (officer had probable cause to arrest defendant under Tenn. Code Ann. § 39-17-1307(a)(1) after officer saw defendant "move a gun from his pants pocket to the driver's side door and then found another loaded pistol inside the car"). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Crockett*, 316 F.3d at 582 (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)). Further, "knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendant[]." *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991). Accordingly, the court

19

concludes that Wallen had probable cause to arrest plaintiff.

In addition, plaintiff complains that Wallen did not speak with other witnesses at the scene, only the victims. Wallen testified that he interviewed McCarty and Ridenour separately and both accurately identified the gun along with giving consistent stories. As noted above, "it is clearly established that reliance on the account of an eyewitness is sufficient to establish probable cause." *Crockett*, 316 F.3d at 584. There is nothing in the record to indicate that at the time Wallen interviewed these witnesses they were not credible or inaccurate in their recollection of the events. *Skousen*, 305 F.3d at 528 ("Eyewitnesses have firsthand knowledge and are presumed to be reliable and truthful."). To the extent plaintiff complains about Wallen's questioning of him, Wallen was not obligated to give credence to his story. *Criss*, 867 F.2d at 263 ("A policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."); *Lucas v. City of Ludlow*, No. 05-52-DLB, 2007 WL 2771153, at *12 (E.D. Ky. Sept. 20, 2007) (officer was under no obligation to investigate further or accept plaintiff's exculpatory version of events. "Probable cause is not negated simply by a plaintiff's plausible exculpatory explanation.") (citing *Ahlers*, 188 F.3d at 371). "[W]hile officers cannot 'turn a blind eye' to potentially exculpatory evidence in making the initial probable cause determination, officers are not required to believe the plaintiff's alibi or investigate it before determining that probable cause to arrest exits." *Wilson v. Morgan*, 477

20

F.3d 326, 336 (6th Cir. 2007) (citing *Ahlers*, 188 F.3d at 372). Furthermore, when Wallen did question plaintiff, plaintiff was evasive about the gun and the fact that he had removed it from the scene and left it with his wife's sister. When plaintiffs dropped the gun off, they knew the police were on the scene waiting for them to return.

In addition, plaintiff has submitted the affidavit of Ruby Mixon who asserts that she was an eye witness to the events. Plaintiff contends that Wallen should have spoken with her at the scene. Mixon does not identify Wallen in her affidavit nor does she contend that she tried to speak with Wallen and he refused to talk with her. Wallen has stated that he does not know who Mixon is and that the only other person he saw at the scene other than the victims and plaintiffs was an elderly lady looking out of her door. "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371; *Crockett*, 316 F.3d at 581 ("Once an officer establishes probable cause, he or she is under no obligation to continue investigating and may instead pursue the arrest of a suspect"); *see also Klein*, 275 F.3d at 551 ("But once a police officer *has* sufficient probable cause to arrest, he need not investigate further.") (emphasis in original).

None of these assertions concerning Wallen's investigation are sufficient to challenge the validity of the grand jury's indictment. They do not demonstrate that Wallen made false representations or material omissions to the grand jury nor do they show that the grand jury proceedings were compromised in any way. As discussed above, Jeffers, without

21

participation from Wallen, took the case to the grand jury. Wallen testified at the grand jury, which returned a true bill. Jeffers is not a defendant, Wallen is. Yet plaintiff has not presented any evidence that Wallen knowingly presented perjured testimony or that there was any type of irregularity in the grand jury proceedings to indicate the proceedings could have been compromised. Therefore, no basis exits for removing the conclusive presumption of probable cause based upon the grand jury's findings. Accordingly, plaintiff has failed to establish the second factor of his malicious prosecution case, and for that reason as well the claim fails.

<u>Qualified Immunity</u>

Wallen argues that even if plaintiff could show that a constitutional violation occurred, he is entitled to qualified immunity as his actions were objectively reasonable in light of clearly established law. Plaintiff argues that qualified immunity does not apply in cases in which an officer intentionally gives false information or omits information at a grand jury proceeding. Plaintiff also contends that Wallen's actions were not reasonable because there was no probable cause and his investigation was inadequate.

"Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir.

2008) (internal quotation marks and citation omitted). "Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). The doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks and citations omitted); *see also Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007)).

In resolving the issue of qualified immunity, the court engages in a two-part analysis and considers "whether (1) the facts that the plaintiff has alleged or shown establish a violation of a constitutional right, and (2) the right at issue was 'clearly established' at the time of the alleged misconduct." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 567 (6th Cir. 2013) (citation omitted). The court has the discretion to determine which of the prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiff has the burden of demonstrating that defendant is not entitled to qualified immunity, which necessitates demonstrating both of these requirements. *Chappell*, 585 F.3d at 907. To overcome the qualified immunity bar, a plaintiff "must present evidence sufficient to create a genuine issue as to whether the defendant committed the acts that violated the law." *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 444 (6th Cir. 2012) (citation omitted). In the summary judgment context, the "plaintiff must present significant probative evidence tending to support [his] version of the facts, *evidence* in which a reasonable jury could return a verdict for [him]. *Chappell*, 585 F.3d at 913 (emphasis in original).

23

Wallen is entitled to qualified immunity. As noted above, there was probable cause to arrest the plaintiff and the grand jury indictment conclusively shows there was probable cause to prosecute. Thus, there is no basis for plaintiff's constitutional claim, and Wallen is entitled to qualified immunity. *Rodriguez v. City of Cleveland*, 439 F. App'x 433, 457 (6th Cir. 2011) (in malicious prosecution case individual defendants entitled to qualified immunity - probable cause existed for plaintiff's arrest and plaintiff indicted by a grand jury so defendants did not violate plaintiff's rights in prosecuting or detaining him and they are entitled to qualified immunity).

Nevertheless, even if the court were to find that probable cause to arrest plaintiff did not exist, Wallen would still be entitled to qualified immunity. "Police officers are entitled qualified immunity unless there is such an utter lack in probable cause that no officer of reasonable competence would have concluded that a warrant should issue." *Garcia v. Thorne*, 520 F. App'x 304, 308 (6th Cir. 2013) (citations omitted). The court's inquiry focuses on whether a reasonable officer would believe, as Wallen did, that based upon the victims's statements, probable cause to arrest plaintiff for aggravated assault and unlawful weapon possession existed. *Crockett*, 316 F.3d at 583. This court concludes that a reasonable officer would have such a belief. "It is clearly established that an arrest without probable cause violates the Fourth Amendment." *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997). Also, to particularize the contours of the Fourth Amendment right, "it is clearly established that reliance on the account of an eyewitness is sufficient to establish

24

probable cause." *Crockett*, 316 F.3d at 584 (citing *Ahlers*, 188 F.3d at 370).

Wallen relied on the accounts of the eyewitnesses, after personally interviewing them separately, to establish the existence of probable cause. If Wallen made a mistake of law, it was a reasonable mistake, as a reasonably competent officer would have found probable cause to arrest plaintiff. "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [the Supreme Court has] indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." *Anderson v. Creighton*, 483 US. 635, 641 (1987). Thus, even if probable cause did not exist to arrest plaintiff, Wallen is entitled to qualified immunity.

## Municipal Liability Under § 1983
### Malicious Prosecution

Plaintiff alleges municipal liability against the City of LaFollette for what amounts to a failure to train claim. The claim fails for several reasons.

"A municipality may be liable for a constitutional violation caused by individuals when those individuals acted pursuant to an official policy of the municipality." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 679 (6th Cir. 2005) (citing *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694). In order for municipal liability to

exist, however, a constitutional violation has to occur. *Voyticky*, 412 F.3d at 679 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001)("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."); *see also Bukowski v. City of Akron*, 326 F.3d 702, 712-13 (6th Cir. 2003) ("[T]he determination that the City's officials did not violate the plaintiffs' constitutional rights resolves the claim against the City as well.") (citing *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000) (where the court noted that the "conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well").

The court has determined that no constitutional claim can go forward as plaintiff's § 1983 malicious prosecution claim fails. Since the individual defendant, Wallen, is entitled to summary judgment on that constitutional claim, plaintiff's municipal liability claim cannot stand. In any event, even if the § 1983 malicious prosecution claim survived summary judgment, plaintiff's municipal liability claim would fail because he has not made the required showing to establish such a claim.

A plaintiff asserting a claim for municipal liability must show that the "alleged federal violation occurred because of a municipal policy or custom." *Burgess*, 735 F.3d at (citing *Monell*, 436 U.S. at 694. A plaintiff can establish an illegal policy or custom by showing one of the following:

26

> 1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Id*. (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.2005)).

Plaintiff asserts what amounts to a failure-to-train claim. In order to establish a failure-to-train claim, plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). Plaintiff has offered no proof of such a pattern existing. Further, to the extent plaintiff attempts to assert a custom-of-tolerance claim, that fails as well. "[A] custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims." *Burgess*, 735 F.3d at 478 (citing *Thomas*, 398 F.3d at 433; *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989)). Again, plaintiff has failed to direct the court to any evidence of such a pattern. Plaintiff has not identified any facts involving prior instances of alleged misconduct that would have put the city on notice of deficiencies in training or investigation.

Plaintiff is also unable to establish municipal liability on a single-act theory, where no pattern of past misconduct is required. *Burgess*, 735 F.3d at 479. "[O]n a single-act theory, a plaintiff must demonstrate that a deliberate choice to follow a course of action

is made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question. Moreover, that course of action must be shown to be the moving force behind or cause of the plaintiff's harm." *Id.* (internal quotation marks and citation omitted). No such showing has been made in this case.

## Malicious Prosecution Under Tennessee Law

After the court's ruling on defendants' motion to dismiss, the only defendant to the state law malicious prosecution claim is Wallen [docs. 14, 15]. There are three elements to a state law claim for malicious prosecution: "(1) A prior suit or judicial proceeding was instituted without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor." *Gray v. 26th Judicial Drug Task Force*, No. 02A01-9609-CV-00218, C95-279, 1997 WL 379141, at *2 (Tenn. Ct. App. July 8, 1997) (citations omitted). Defendant Wallen argues that plaintiff cannot demonstrate elements one and two. Plaintiff argues that there are material issues of fact precluding summary judgment.

With regard to the first element, the issue of probable cause, earlier cases have "declined to adopt a per se rule that the indictment of the accused by a grand jury is evidence that the person who initiated the proceedings has probable cause therefore." *Day v. Ingle's Mkts, Inc.*, No. 2:01-CV-325, 2006 WL 239290, at *3 (E.D. Tenn. Jan. 25, 2006) (citing *Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247 (Tenn. Ct. App. 1982)). More recent

decisions from the Tennessee Court of Appeals have decided differently. In *Bovat v. Nissan North America*, No. M2013-00592-COA-R3-CV, 2013 WL 6021458 (Tenn. Ct. App. Nov. 8, 2013), the Court affirmed the dismissal on summary judgment of a malicious prosecution claim. The Court addressed the elements of malicious prosecution, and found the following as to the issue of probable cause: "The Williamson County Grand Jury independently issued the indictment of stalking. An indictment by a grand jury equates to a finding of probable cause. Therefore, Plaintiff cannot prove the first element of a claim of malicious prosecution: that the charge was brought against the plaintiff without probable cause." *Id*. at *3 (citations omitted). Similarly, in *Crowe v. Bradley Equipment Rentals & Sales*, No. E2008-02744-COA-R3-CV, 2010 WL 1241550, (Tenn. Ct. App. Mar. 31, 2010) the Court determined that plaintiff could not sustain a claim for malicious prosecution. The Court stated, "Regarding the malicious prosecution claim, an indictment by a grand jury equates to a finding of probable cause. The Second Restatement of Torts also provides that an indictment by a grand jury qualifies as evidence of probable cause in malicious prosecution actions." *Id*. at *5.

The court is inclined to follow the more recent Tennessee Court of Appeals cases and find that plaintiff cannot establish the first element of his malicious prosecution claim because he was indicted by the Campbell County Grand Jury. Nevertheless, even applying the authority from the earlier court of appeals cases, this court would reach the same conclusion. Plaintiff needs to show that the grand jury indictment was "procured by fraud,

29

false testimony or other corrupt means" in order to have the indictment deemed insufficient and thus be a bar to a subsequent action for malicious prosecution. *Kerney*, 648 S.W.2d at 252; *Gray*, 1997 WL 379141, at *4 (claim for malicious prosecution failed as plaintiff could not show lack of probable cause because there was no evidence in the record that the grand jury indictment was procured by fraud, perjury, or other corrupt means). Plaintiff has not presented any evidence to demonstrate that Wallen testified falsely at the grand jury or that the grand jury proceedings involved fraud or any other corrupt means. Thus, plaintiff cannot prove the first element of his claim for malicious prosecution: that the charges were brought against him without probable cause. The claim fails on that basis.

In any event, even if plaintiff could demonstrate the element of probable cause, he must also show that Wallen acted with malice. In the context of a malicious prosecution case, "any improper motive is sufficient to constitute malice; ill will or personal hatred is not needed." *Massingille v. Vandagriff*, No. M2012-01259-COA-R3-CV, 2013 WL 5432893, at *3 (Tenn. Ct. App. Sept. 24, 2013); *Shipp v. United States*, 212 F. App'x 393, 400 (6th Cir. 2006) (applying Tennessee law) ("The definition of malice for purposes of a malicious prosecution lawsuit is not the same as it is in a defamation case. Any improper motive is sufficient to constitute malice when malicious prosecution is charged. Ill will or personal hatred need not be shown, though these would certainly be sufficient to establish malice.") (citations omitted). Malice can also be inferred from a lack of probable cause. *Massingille*, 2013 WL 5432893, at *3. "Under Tennessee law, malice concerns the subjective mental

state of the [defendant]." *Shipp*, 212 F. App'x at 400 (internal quotation marks and citation omitted).

Plaintiff has not presented any evidence to show that Wallen acted with malice, nor does plaintiff provide any argument that specifically addresses the issue of whether Wallen acted with malice. Both plaintiffs testified that they had no evidence to show that Wallen acted with malice, and Billy Joe Powers testified that he did not know what malicious intent Wallen might have had.

In addition, for the first time in the response to the motion for summary judgment, plaintiff makes reference to "an ulterior motive" and argues that along with a lack of evidence this would support a claim for malicious prosecution. Plaintiff then also argues that the case should have been dismissed for lack of evidence rather than *nolle prosequi*. To the extent the argument is an attempt to show malice on the part of Wallen, the argument fails. First, plaintiff makes no mention of nor directs the court to any allegation related to an "ulterior motive" in the amended complaint, and none will be inferred. *Cf. Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (once case reaches summary judgment stage, liberal pleading standards of the Federal Rules of Civil Procedure do not apply – to permit plaintiff to add new claim in response to summary judgment motion would subject defendant to unfair surprise); *Bridgeport Music, Inc., v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent Bridgeport seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on

31

appeal."). Second, there is simply no proof at all in the record of any ulterior motive, demonstrated by Wallen or otherwise. Malice on the part of Wallen cannot be shown by any "ulterior motive," whether standing alone or linked to a suggested lack of evidence.

Further, plaintiff's argument that it would have been more appropriate for the criminal case to have been dismissed for lack of evidence rather than by *nolle prosequi* is speculative at best and does not advance his attempt to survive summary judgment. The record is clear that Wallen had no control over the disposition of the criminal matter. The Jeffers Affidavit demonstrates that he was in charge of the prosecution and that the case was dismissed because the victims could not be located and failed to appear. Plaintiff has offered no evidence to counter this testimony. Plaintiff simply has not demonstrated that Wallen acted with any improper motive, and therefore he cannot establish the second element of his state law malicious prosecution claim. The claim fails on this basis as well.

Loss of Consortium Claim

Defendant Wallen argues that Sarah Powers's loss of consortium claim fails because it has no merit and because her testimony reveals she has no damages. Defendant also argues that her claim is not derivative of any "bodily injury" by her husband. In their response, plaintiffs argue that a loss of consortium claim can be brought in a § 1983 action.[3]

---

[3] The court has already dismissed the loss of consortium claim that the court determined was brought under § 1983, while allowing the claim to go forward as a derivative claim of the state law malicious prosecution claim. After the court's ruling, plaintiffs filed an amended complaint [doc.
(continued...)

They also argue that in his deposition Billy Powers discussed the physical manifestations of his injuries that give rise to his wife's loss of consortium claim, although that testimony has not been provided to the court.[4]

"[T]he basis for recovery for loss of consortium is interference with the continuance of a healthy and happy marital life and injury to the conjugal relation." *Tuggle v. Allright Parking Sys., Inc*., 922 S.W.2d 105, 109 (Tenn. 1996) (citation omitted). The record does not contain proof to demonstrate that Sarah Powers was deprived of her husband's services, assistance or companionship. She testified in her deposition that her claim was not related to a loss of physical intimacy and that she had not had to hire anyone to perform work around the house. There is no evidence to show Sarah Powers has sustained damages, and on that basis the claim fails.

In any event, the claim fails because her husband's state law malicious prosecution claim has failed. "A crucial element of a plaintiff's claim for loss of consortium in Tennessee is that the defendant in question must be proven liable for the injuries to the

---

[3](...continued)
16] that alleges a loss of consortium claim resulting from the violation of state law. Thus, the only claim for loss of consortium before the court and subject to defendants' summary judgment motion is based upon the remaining state law claim of malicious prosecution. Plaintiffs cite *Kinzer v. Metropolitan Government of Nashville*, 451 F. Supp.2d 931 (M.D. Tenn. 2006). The district court in that case permitted the wife's loss of consortium claim to proceed because it did not arise *under* § 1983 but *alongside* the § 1983 action. Based upon the pleadings in the original complaint that were the subject of the motion to dismiss, the court determined that Sarah Powers was asserting a loss of consortium claim *under* § 1983 and accordingly dismissed it.

[4] In support of this contention, plaintiff cites to three pages from his deposition, pages 104-106. However, these pages are not an exhibit to the response and therefore are not before the court.

33

spouse giving rise to the loss of consortium claim." *Wentz v. Best W. Int'l, Inc.*, No. 3:05-cv-368, 2007 WL 869620, at *4 (E.D. Tenn. Mar. 20, 2007); *Kinzer*, 451 F. Supp. 2d at 935 ("An important element of a party's claim for loss of consortium in Tennessee is that the defendant must actually be liable for the injuries to the spouse."). As noted above, plaintiff's state law malicious prosecution claim cannot proceed and will be dismissed. Accordingly, Sarah Powers's loss of consortium claim that is derivative to her husband's claim cannot be sustained and will also be dismissed.

IV.

*Conclusion*

Accordingly, for the reasons discussed above, defendants' motion for summary judgment will be granted, and this case will be dismissed. An order consistent with this opinion will be entered.

ENTER:

_____s/ Leon Jordan_____
United States District Judge

34